[Civ. No. 22299. Second Dist., Div. Three. Feb. 27, 1958.]

GEORGE T. MARTIN, a Minor, etc., et al., Appellants, v. THE ROMAN CATHOLIC ARCHBISHOP OF LOS ANGELES (a Corporation Sole), Respondent.

*Assigned by Chairman of Judicial Council.

William A. Wittman and Donald J. Pierce for Appellants.

Belcher, Kearney & Fargo, Louis E. Kearney and Stevens Fargo for Respondent.

WOOD (Parker), J.—Action for damages for personal injuries sustained by plaintiff George T. Martin, a minor, while he was playing football on school grounds maintained by defendant. Plaintiff George L. Martin, the father of the minor plaintiff, sought recovery of money expended by him for medical care for the minor. The trial judge instructed the jury to return a verdict for defendant. Such a verdict was returned and judgment was entered thereon. Plaintiffs appeal from the judgment and the order denying their motion for a new trial.

George T. Martin, the minor, 14 years of age, was a pupil at the Pius X High School. One afternoon during the week preceding February 19, 1955, after classes for that day had been finished, George and several other pupils (boys) were in their homeroom at the school, where they were to remain for a period of 10 minutes, awaiting the ringing of a bell which would dismiss them for the day. During that period the pupils were in assigned seats. When the bell rang, some of the boys (not George) rushed toward the door and a boy was pushed into a window glass and the glass was broken. The next morning when the boys were in a classroom a teacher told them that they would be punished for breaking the glass and that they should stay after school on week days and pull

weeds at the football field, or they should go to the football
field the following Saturday (February 19) and pull weeds.
There was no evidence as to whether some of the boys decided
to stay after school on week days or whether all of them
decided to go to the field on Saturday. There was no evidence
as to the length of time they were to pull weeds or what time
on Saturday they should arrive at the field. One of the boys
was told to "take roll" to see who came on Saturday. George
arrived at the football field about 9 a. m. on Saturday, and no
one was pulling weeds. At that time 15 or 20 boys were there
getting ready to play football. The boys were pupils at the
school but some of them were from a different homeroom of
the school. One "side" chose George and then they started
playing football. All the boys were about the same size. Some
of them were on the regular team of the school. All of
them were wearing street clothes—no one was wearing a foot-
ball uniform, or helmet, or shoulder pads. George had played
football and other games previously, but he had not played
contact football at that school. On that Saturday he played
on the line for a while, blocking the players. Then he played
quarterback, running with the ball. While he was running
with the ball, holding it with both hands and arms, a player
"body-blocked" him or "tossed himself against" or under
George's legs. George fell and broke his left arm. The acci-
dent occurred about 15 minutes after they began playing.
No supervisor or teacher was present while the boys were play-
ing football. It was a private school. During the part of the
school year preceding the day of the accident, George had
been working in his father's television store on Saturdays
from 10 a.m. to 4 p.m. George testified that he would have
worked at the store on Saturday, February 19, if he had not
gone to the school on that day; and that he had received per-
mission from his father to go to the school.

█ Appellants assert that defendant was negligent in
that no supervisor or teacher was present on the football field
when the boys were there; and that whether such negligence
was a proximate cause of the injury was a question of fact
for the jury. █ They argue that the court did not give
consideration to section 13229 of the Education Code which
provides that teachers are required to hold the pupils to strict
account for their conduct on the playgrounds. They also cite
section 1007 of that code which imposes liability for negligence
of a school district or its officers or members upon the govern-
ing board of the district, provided a verified claim is filed

with the secretary of the district within 90 days after the accident. Those sections relate to public schools. As above stated, the school involved here is a private school. Furthermore, even if those sections were applicable to the private school, there was no evidence that a verified claim was filed as required by section 1007. ██ It does not appear that there was any rule of the private school regarding the attendance of a supervisor on the playground during intermission or before or after school. The argument of appellants seems to be that if a supervisor or teacher had been present there would have been no football game and therefore George would not have been injured. There was evidence to the effect that football was a normal play activity at the school. Some of the boys who were playing in the game involved here were on the regular football team of the school. Whether a supervisor or teacher, if present, would have allowed the game to be played was a matter of speculation. If the game had been played under supervision the players might have been required to wear uniforms, but there was evidence that there is no football uniform or equipment which would protect the arm of a football player. If a supervisor or teacher had been present and had allowed the game to be played, it cannot be said that the manner of running with the ball or of blocking the players would have been different. It does not appear that the game was played in an abnormal manner. In *Underhill* v. *Alameda E. School Dist.*, 133 Cal.App. 733 [24 P.2d 849], a pupil sought damages for personal injuries resulting from being struck by a bat during a baseball game (it is not clear whether plaintiff was playing the game). The court said at pages 735 and 736: "All of the above-mentioned games [baseball, basketball, volleyball and handball] contribute to the physical development of the pupils participating and there is nothing inherently dangerous about any of them. They seldom result in injury to either the participants or spectators and are ordinarily played by school children of all ages without adult supervision. Nevertheless it is also a matter of common knowledge that children participating in such games and in fact in any form of play may injure themselves and each other and that no amount of precaution or supervision on the part of parents or others will avoid such injuries. The injuries which may result from the playing of said games are ordinarily of an inconsequential nature and are incurred without fault on the part of anyone. In such cases there is no liability and, of course, the fundamental rules governing lia-

bility remain the same even though the particular injury may prove to be of a more serious nature. The law does not make school districts insurers of the safety of the pupils at play or elsewhere and no liability is imposed upon a district under the above-mentioned section in the absence of negligence on the part of the district, its officers or employees.'' The case of *Forgnone* v. *Salvador U. E. School Dist.*, 41 Cal.App.2d 423 [106 P.2d 932], cited by appellants, is distinguishable from the present case. In that case, while pupils were in a school-room at lunch time, a girl's arm was twisted and broken by another pupil. The court said at page 427: '' [I]f the supervisor had been present in the school room where the students were eating their luncheons, it would be expected that she would prevent the students from engaging in rough and dangerous scuffling which was likely to result in personal injuries to students.'' In the present case it cannot be said that there was evidence which would support a finding that a supervisor or teacher would have forbidden the game or that he could or would have prevented the play which resulted in the injury. Furthermore, George, a 14-year-old pupil, was disobeying the direction that he go upon the grounds and pull weeds. In *Ford* v. *Riverside City School Dist.*, 121 Cal. App.2d 554 [263 P.2d 626], a 9-year-old pupil and another pupil, during recess at a public school when a supervisor was on the grounds, had disobediently gone, without the knowledge of the supervisor, into a shrub area on the school ground and was there injured by a thorn which was pulled from a palm tree. In that case at page 562, the court quoted from another case as follows: ''The statute does not create a liability upon the district for injuries arising from the unlawful or wilful misconduct of its students.'' Also in that case, the court said at page 563: ''The evidence shows that the school authorities had no knowledge or notice of any dangerous practice engaged in by the school students in connection with the palm tree. There is no evidence that any of the teachers could reasonably expect that the plaintiff would surreptitiously visit the shrub area during the recess period or that the yard supervisors had knowledge of his concealed presence at the palm tree.''

In the present case there was no evidence indicating that the matter of pulling weeds involved a dangerous undertaking. Since the teacher told one of the boys to take the roll of those who came to the field to pull weeds, it might reasonably be inferred that the teacher was placing the boys on their honor to

pull weeds in the absence of the teacher and it was not intended that a teacher or supervisor should be present. In view of the apparently nondangerous work of pulling weeds, which was assigned to the boys as a disciplinary measure in a minor matter (rushing toward a door when the dismissal bell rang and accidentally breaking a window glass), it would not be negligence on the part of defendant to place the boys on their honor to perform such work without supervision.

There was no evidence as to what time on Saturday the boys should arrive at the field or as to the length of time they were to pull weeds. Even if the teacher or supervisor intended to be present while the weeds were being pulled, if the boys arrived there and began playing football prior to the time schedule for the arrival of the teacher or supervisor, the absence of the teacher or supervisor prior to the scheduled time would not constitute negligence.

The attempted appeal from the order denying the motion for a new trial is dismissed. The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.